UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| ANDREA MARTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-00038-PLC |
| | ) | |
| DAVE'S WHOLESALE FIREWORKS and | ) | |
| BLACK CAT MARKETING USA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Black Cat Marketing USA's ("Black Cat") motion to dismiss for lack of personal jurisdiction [ECF No. 21]. Plaintiff Andrea Marty opposes the motion [ECF No. 26], Black Cat filed a reply brief [ECF No. 29], and the Court heard oral argument. For the reasons stated below, the Court grants the motion.[1]

**I. Factual and Procedural Background**

This product liability tort action arises from an injury to Plaintiff's left hand sustained while she ignited a half-stick smoking cracker ("the Firework"). More specifically, on September 8, 2014, the Firework allegedly exploded prematurely causing "massive injuries to [P]laintiff's left hand, including amputation of her left middle and left index fingers, and loss of the majority of [her] left thumb." Pl.'s compl. ¶ 12 [ECF No. 1]. Defendants allegedly distributed and sold the Firework, which Plaintiff asserts, was defective and unreasonably dangerous at the time it was manufactured, distributed, sold, and used by Plaintiff. Id. ¶ 10.

Plaintiff, currently a resident of Colorado, lived in Illinois at the time of the accident. Id. ¶ 1. While Plaintiff alleges: (1) she was "a citizen and resident of . . . Illinois" at the time of the

---

[1] The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

accident and (2) an earlier lawsuit in the "Ninth Judicial Circuit of Illinois, Henderson County," Illinois, "was voluntarily dismissed without prejudice," Plaintiff does not describe the place where the accident occurred. See id. ¶¶ 1, 14.

Defendant Dave's Wholesale Fireworks ("Dave's Fireworks") is "a Missouri corporation having its principal place of business" in Canton, Missouri. Id. ¶ 2. Dave's Fireworks sells fireworks to other retail vendors of fireworks "for subsequent resale to the public" and to the general public. Id. ¶ 6. Before September 8, 2014, Dave's Fireworks distributed and sold the Firework to Marty's Fireworks, Inc.[2] in Hazel Green, Wisconsin, for "subsequent resale to the public." Id. ¶¶ 6, 8. Plaintiff purchased the Firework from Marty's Fireworks prior to September 8, 2014. Id. ¶ 9.

Defendant Black Cat is "a Kansas corporation having its principal place of business . . . [in] Prairie Village, Kansas." Id. ¶ 3. Black Cat is "engaged in the business . . . of marketing, distributing, and/or facilitating the sale of fireworks to retailers." Id. ¶ 7. Shiu Fung Fireworks Company, Ltd.,[3] ("Shiu Fung") manufactured the Firework.[4] Id. Before September 8, 2014, Black Cat "had distributed and/or otherwise had placed . . . [the Firework] into the stream of commerce, thereby causing and/or contributing to cause" the Firework's "distribut[ion] and/or" sale to Dave's Fireworks "for resale to other firework vendors and to the public." Id.

---

[2] Marty's Fireworks, Inc. is not a party to this case.

[3] This entity is identified as "Shui Fung Fireworks Company, Ltd." in Plaintiff's complaint. See Pl.'s compl. ¶ 7 [ECF No. 1]. In materials submitted by Plaintiff in support of its opposition to the motion to dismiss, however, the entity's name is "Shiu Fung Fireworks, Ltd" or "Shiu Fung Fireworks Company, Ltd." See, e.g., id., Ex. D, [ECF No. 26-5]; ¶ 8 of the undated Aff. of Harry Chang, President of Golden Gate Fireworks, Inc. d/b/a/ Black Cat Marketing USA. [ECF No. 26-7]. Because the President of Black Cat's corporation states the name of this entity is "Shiu Fung Fireworks Company, Ltd.," the Court uses that name when referring to it.

[4] Shiu Fung is not a party to this case.

(A) Parties' arguments

Black Cat seeks dismissal arguing that it is not subject to personal jurisdiction in a court in Missouri. More particularly, Black Cat contends the Court lacks both general and specific personal jurisdiction over it and must, therefore, dismiss Plaintiff's claim against it. Plaintiff does not "invoke or assert" general personal jurisdiction. See Pl.'s opp'n mot. dismiss at 9 [ECF No. 26]. Instead, Plaintiff contends only that the Court may exercise specific personal jurisdiction over Black Cat. In reply, Black Cat suggests the "Court's analysis should be limited to determining whether specific jurisdiction exists." Black Cat's reply at 1 [ECF No. 29]. Under principles enunciated in Daimler AG v. Bauman, 571 U.S. 117 (2014), Black Cat's undisputed position that the Court cannot exercise general personal jurisdiction over Black Cat is well-taken, because the record does not show that Black Cat is incorporated in or has its principal place of business in Missouri.[5] Under the circumstances, the Court need not further discuss Black Cat's general personal jurisdiction argument.

With respect to its specific personal jurisdiction argument, Black Cat contends there is no basis for the exercise of such jurisdiction under Missouri's long arm statute, Mo. Rev. Stat. § 506.500, or the Fourteenth Amendment's Due Process Clause. For purposes of Missouri's long-arm statute, Black Cat argues Plaintiff has not shown her claim arose from any tortious act Black Cat committed or business that Black Cat transacted in Missouri. Black Cat reply at 2-5 [ECF No. 29]. In particular, Black Cat urges Plaintiff has not established "how [Black Cat's] alleged marketing activities in Missouri" are connected to an Illinois resident's purchase of the allegedly

---

[5] Plaintiff alleges that Black Cat is incorporated in Kansas. See Pl.'s compl. ¶ 3. Black Cat argues it is not a Kansas corporation but "a d/b/a for Golden Gate Fireworks, Inc., which is a California corporation." See Black Cat mem. supp. mot. dismiss at 5 [ECF No. 22]. This conflict between the parties about the state where Black Cat may be considered incorporated is not material to Black Cat's general personal jurisdiction argument. Rather, Black Cat's "incorporation" in any state other than Missouri supports its challenge to this Court's exercise of general personal jurisdiction over Black Cat in this case. See Daimler AG v. Bauman, 571 U.S. 117 (2014) (absent special circumstances, a corporate defendant is subject to general personal jurisdiction only in any state in which it is incorporated or has its principal place of business).

3

defective Firework in Wisconsin.  Id. at 2.  With respect to the Due Process Clause, Black Cat maintains that neither a "stream of commerce" theory nor the internet website support the Court's exercise of specific personal jurisdiction over Black Cat, and exercising such jurisdiction would violate traditional notions of fair play and substantial justice.  Id. at 5-11.

Plaintiff responds that Missouri's long-arm statute and the Fourteenth Amendment's Due Process Clause subject Black Cat to this Court's specific personal jurisdiction because Plaintiff's claim "arose" out of or is "related to" Black Cat's marketing activities in Missouri.  Pl's opp'n mot. dismiss at 2 [ECF No. 26].  In support of its position that Black Cat's marketing efforts were directed toward Missouri and are related to Plaintiff's claim, Plaintiff submitted:  (1) copies of a transcript of a May 8, 2017 deposition and an undated affidavit of Harry Chang, President of Golden Gate Fireworks, Inc., d/b/a Black Cat Marketing U.S.A. [ECF Nos. 26-4 and 26-7]]; (2) printouts of portions of a website for Black Cat Fireworks, www.blackcatfireworks.com [ECF Nos. 26-5, 26-6, 26-9, 26-10]; (3) copies of written materials prepared by Black Cat regarding the "Partner Program" [ECF Nos. 26-8, 26-11, 26-13, and 26-14]; and (4) an affidavit of Plaintiff, dated Nov. 30, 2014, describing the Black Cat Fireworks information she saw, with pictures of displays and truck-unloading activity at Marty's Fireworks [ECF Nos. 26-3 and 26-12].[6]  While it is not clear with respect to all of Plaintiff's submitted materials, it appears, based on the dates of the materials, the deposition caption, as well as various deposition questions, deposition responses, and certain affidavit averments that refer explicitly to Illinois, that the deposition and affidavits were part of the earlier Illinois lawsuit Plaintiff filed and

---

[6] Plaintiff also submitted an affidavit of Lynne Marty, dated Oct. 12, 2016 [ECF No. 26-2].  In her affidavit, Lynne Marty avers, in relevant part, that she is Plaintiff's aunt; a resident of Hazel Green, Wisconsin; and the sole owner of P. Marty's Enterprises, Inc., a Wisconsin corporation which only sold fireworks.  Id. ¶¶ 1-4.

dismissed. Black Cat does not contest the Court's consideration of these materials and did not file evidentiary materials responding to, opposing, or disputing the materials Plaintiff submitted.[7]

(B) <u>Information from Plaintiff's submitted materials</u>

In his undated affidavit [ECF No. 26-7], Mr. Chang states he is the President of Golden Gate Fireworks, Inc. ("Golden Gate") d/b/a Black Cat Marketing USA, which was incorporated in the State of California. Chang aff. ¶¶ 2, 3.[8] Mr. Chang avers the principal office for Golden Gate is in California and Black Cat's principal office is in Prairie Village, Kansas. <u>Id.</u> ¶¶ 4, 5. Black Cat, Mr. Chang avers, "does not manufacture, sell, or distribute fireworks" but "engages only in marketing activities to promote the Black Cat Firework brand." <u>Id.</u> Furthermore, Mr. Chang states, "[s]ales of Black Cat Fireworks to U.S. importers are conducted overseas by Shiu Fung . . . , a Hong Kong corporation." <u>Id.</u> ¶ 8. Mr. Chang avers that Black Cat maintains a website "for purposes of marketing the Black Cat Fireworks brand [but] does not sell fireworks through the website." <u>Id.</u> ¶¶ 10, 11. Additionally, as stated in Mr. Chang's affidavit, Black Cat "offers enrollment in promotional programs through its website [and that] enrollment . . . does not result in the sale of fireworks." <u>Id.</u> ¶¶ 12, 13.[9]

The 2017 deposition [ECF No. 26-4] of Mr. Chang reveals the following: Mr. Chang has worked at Golden Gate Golden Gate Fireworks, Inc. d/b/a Black Cat Marketing USA since 2005. Chang dep. at 5-6, 9. Mr. Chang works in California and supervises three employees (a graphic designer, a vice president of "brand marketing," and an assistant) located in the Kansas

---

[7] With its memorandum in support of its motion to dismiss, Black Cat filed a Statement of Information from the California Secretary of State, dated February 13, 2018 [ECF No. 22-1]. The Statement of Information states that Golden Gate Fireworks, Inc. is incorporated and has its principal place of business in California, identifies the officers, and describes its business as "marketing."

[8] <u>See also</u> Chang dep. at 75-76.

[9] Eight paragraphs of Mr. Chang's affidavit set forth statements specifying the manner in which Black Cat does not have a presence in Illinois.

Black Cat office. Id. at 8-10. The marketing services provided at Black Cat's Kansas office include "design[ing] . . . the promotional materials, [such as] brochures, . . . sweepstakes materials, . . . posters, . . . flags and pendants [sic?]; . . . the fireworks labels for Shiu Fung[;] . . . [a]nd any other marketing-related programs." Id. at 8-9. Black Cat also "manage[s a] website, but . . . ha[s] an outside firm that does the coding and . . . other general maintenance for" the website. Id. at 17-18. Black Cat, Mr. Chang testified, "does not sell any fireworks" and "is not a distributor of fireworks." Id. at 15 and 46. Instead, Mr. Chang stated, Black Cat tries "to build brand awareness" for the Black Cat brand of fireworks. Id. at 21. Specifically, Black Cat is "trying . . . to increase the sales of Black Cat Fireworks in the United States in areas where they are legal." Id. at 23.

Black Cat has "master dealers," "partners," and "preferred partners." See, e.g., id. at 11, 12, and 28-29. A Black Cat "master dealer," Mr. Chang explained in his deposition, is "a fireworks company . . . [that] carr[ies] a broad selection of Black Cat [Fireworks] products. [There are] only . . . a few of them in the U.S." Id. at 12. A master dealer may be a distributor receiving product from an importer or may itself be an importer that sells "to a distributor or . . . . to a retailer directly." Id. Mr. Chang described a "master dealer" as "merely a customer" that "buy[s] a certain amount" and "carr[ies] a broad selection of Black Cat [Fireworks] products." Id. at 15. Black Cat works with the master dealers on "signage [and] the design of flags and posters[,] . . . solicit[s] their input because they are close to the consumer[,] . . . and talk[s] with them, not in a sales mode [but] in a marketing support mode." Id. at 26.

A Black Cat partner "is simply [a position for a company allowing it] access to the marketing materials that [Black Cat] ha[s] on the website," specifically website information that consumers do not have access to, such as, "our marketing materials, our brochures, our

6

premiums, catalogs, et cetera." Id. at 12-13; see also "Black Cat Partner Program" sheet [ECF No. 26-11]. Mr. Chang stated in his deposition that, "to get access [to those website materials a company] sign[s] up as a partner . . . by submitting a request to [Black Cat] via the website," then Black Cat calls the company to find out "who their Black Cat [Fireworks] distributor is," Black Cat contacts the identified distributor to ascertain whether the company is "a legitimate customer" of the distributor, and, if so, "then [the company] will be a partner" of Black Cat. Chang dep. at 13, 66-67 [ECF No. 26-4]. From "time to time" Black Cat sends its partners promotional information, such as newsletters, which they "don't do . . . anymore." Id. at 27; see also copies of "Scratch Pad A Newsletter For Partners And Customers" [ECF Nos. 26-13, 26-14]. While Black Cat would send a partner "advertising materials such as posters or flags" if a partner requests them, "normally, the [partners] are not dealing with [Black Cat directly but] with their Black Cat [Fireworks] distributor." Chang dep. at 13 [ECF No. 26-4]. An undated, untitled list of Black Cat partners in Indiana, Missouri and Wisconsin provided by Plaintiff [ECF No. 26-8] lists Marty's Fireworks in Wisconsin and approximately forty vendors in Missouri, but not Dave's Fireworks. See Chang dep. at 35-36 [ECF No. 26-4] identifying what the list is.

A Black Cat "preferred partner" is a retail location that a fireworks dealer "tell[s] us [is] a good . . . Black Cat [Fireworks] customer" of the dealer. Id. at 28. "[T]he preference . . . they . . . get is that [Black Cat] would list [a preferred partner] higher in the dealer locator part of the" website. Id. at 28-29. The "dealer locator" part of the Black Cat website is "a service [Black Cat] provide[s so] that a consumer . . . looking to purchase Black Cat [Fireworks] product[s], . . . know[s] where to go." Id. at 29. The printout of the dealer locator part of the website submitted by Plaintiff [ECF No. 26-9] lists Marty's Fireworks, but does not list Dave's Fireworks.

7

Shiu Fung and Black Cat are separate companies.  Id. at 76.  Mr. Chang characterized Shiu Fung as Black Cat Fireworks' manufacturer "because [Shiu Fung] procure[s] the product." Id. at 76.  More specifically, Mr. Chang described Shiu Fung's role as follows:  "Shiu Fung has relationships with a number of importers in the U.S.  And those importers give their [Black Cat Fireworks] orders to Shiu Fung.  Shiu Fung gets them manufactured and ships them to these customers.  And [Shiu Fung] do[es] not deal directly with subdistributors or retailers, only with the importers."[10]  Id. at 10-11.

Neither Mr. Chang's affidavit nor the questions and testimony in Mr. Chang's deposition focus on whether or in what respect Black Cat's marketing activities are directed to either Missouri or Dave's Fireworks, which is located in Missouri.[11]

In her November 2014 affidavit [ECF No. 26-3], Plaintiff states that, prior to her purchase of the Firework in Wisconsin in the summer of 2014, she knew of the Black Cat brand of Fireworks from "prior use of that brand; recommendation of that brand from Lynne Marty; viewing of the Black Cat website which displays the brand and provides information about the products; viewing of Black Cat fireworks on You Tube; and from promotional displays and posters at Marty's Fireworks."  Id. para. 3.  With her affidavit, Plaintiff provided pictures of displays inside Marty's Fireworks.  Plaintiff avers that her purchase was based "particularly" on promotional information on the Black Cat Fireworks website and in-store displays.  Id. para. 4.  Plaintiff does not aver where she saw the website information.

---

[10]  Black Cat and Shiu Fung are both owned by Li & Fung, Limited.  Chang dep. at 6-7 [ECF No. 26-4]. Neither Shiu Fung nor Li & Fung, Limited have offices in the United States.  Id. at 73.

[11]  Certain questions during Mr. Chang's deposition asked about retailers or distributors in Missouri near borders with Wisconsin or Illinois, but nothing of record demonstrates that Dave's Fireworks is such a retailer or distributor or that Black Cat directed its marketing efforts explicitly to such retailers or distributors in contrast to all retailers and distributors throughout the country.

8

**II. Legal Standard**

To survive a defendant's challenge for lack of personal jurisdiction,[12] a plaintiff must make a prima facie showing that personal jurisdiction over the challenging defendant exists. Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014). A plaintiff's prima facie showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." K–V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592 (8th Cir. 2011) (internal quotation marks and citation omitted). Although a court considering a personal jurisdiction challenge views evidence in a light most favorable to the plaintiff and resolves factual conflicts in the plaintiff's favor, the burden of proof does not shift to the party challenging jurisdiction. Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., 646 F.3d 589, 592 (8th. Cir. 2011); Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th. Cir. 2003).

"The primary focus of [a court's] personal jurisdiction inquiry is the [non-resident] defendant's relationship to the forum State." Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty., 137 S. Ct. 1773, 1779 (2017) ("Bristol-Myers Squibb") (addressing a state court's specific personal jurisdiction). Courts recognize two types of personal jurisdiction: general and specific. Id. at 1779-80. "In order for a . . . court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum."[13] Id. at 1780

---

[12] Federal Rule of Civil Procedure 12 explicitly provides for a defendant's filing of a pre-answer motion raising a Court's lack of personal jurisdiction, and states such a defense may be waived if not presented through such a motion. See Fed. R. Civ. P. 12(b)(2) and 12(h).

[13] The Supreme Court left "open the question whether the Fifth Amendment['s Due Process Clause] imposes the same restrictions on the exercise of personal jurisdiction by a federal court" as the Fourteenth Amendment's Due Process Clause imposes on a state court, the issue addressed in the Bristol-Myers Squibb decision. 137 S. Ct. at 1783-84. Both parties here cite to and argue the application of the Bristol-Myers Squibb decision. The Eighth Circuit uses the same analysis as Bristol-Myers Squibb when considering a defendant's challenge to a federal court's exercise of specific personal jurisdiction over state law claims. See, e.g., Fastpath, Inc., 760 F.3d at 820 (a federal court having diversity jurisdiction over a plaintiff's state law claims against a non-

9

(emphasis in original) (internal quotation marks and citations omitted); accord Fastpath, Inc., 760 F.3d at 821. That is, for a defendant to be subject to a court's specific personal jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." Bristol-Myers Squibb, 137 S. Ct. at 1781. If there is no such connection, then there is no specific jurisdiction, "regardless of the extent of a defendant's unconnected activities in the States." Id. More specifically, a "defendant's general connections with the forum [state] are not enough" to support the exercise of specific jurisdiction. Id. Based on these principles, the Supreme Court concluded a California state court could not exercise specific personal jurisdiction over a non-resident defendant facing product liability claims pursued by non-resident plaintiffs with respect to injuries those plaintiffs allegedly suffered after using defendant's drug, because the plaintiffs did not purchase, ingest, or get injured by the drug in California. Id. at 1781-82.

The Eighth Circuit holds that a federal court having diversity jurisdiction over a plaintiff's state law claims against a non-resident defendant may exercise jurisdiction over that defendant "only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." Fastpath, Inc., 760 F.3d at 820. "Missouri's long-arm statute authorizes personal jurisdiction over defendants who . . . transact business, make a contract, or commit a tort within the state." Viasystems, Inc., 646 F.3d at 593 (citing Mo. Rev. Stat. § 506.500.1). "These individual categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted to provide for jurisdiction . . . to the full extent permitted by the Due Process Clause." Id.

---

resident defendant may exercise jurisdiction over that defendant only if, in relevant part, the exercise of jurisdiction is "permitted by the Due Process Clause of the Fourteenth Amendment").

(internal quotation marks omitted) (quoting State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)).

"Because the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," the Court considers "whether the assertion of [specific] personal jurisdiction would violate due process."' Aly v. Hanzada for Import & Export Co., 864 F.3d 844, 849 (8th Cir. 2017) (internal quotation marks omitted) (quoting Eagle Tech. v. Expander Americas, Inc., 783 F.3d 1131, 1136 (8th Cir. 2015)). "[A] finding that a plaintiff has *failed* to establish that personal jurisdiction comports with the Due Process Clause is dispositive in Missouri cases, thus obviating the necessity of a long-arm inquiry." Gray v. Hudson, No. 14CV1183 HEA, 2015 WL 4488143, at *9 (E.D. Mo. July 23, 2015) (emphasis in original) (citing Eagle Tech, 783 F.3d at 1136). If the Court finds due process supports the exercise of specific personal jurisdiction over Black Cat, then the Court addresses whether such jurisdiction is supported by Missouri's long-arm statutory provisions. Id.[14]

**III. Discussion**

Black Cat argues that this Court lacks specific personal jurisdiction over it because its activities in Missouri are not related to the Illinois Plaintiff's purchase of the allegedly defective Firework in Wisconsin. Black Cat also maintains that its activities are solely related to the marketing of fireworks and, as such, it "is not responsible for the distribution of the [F]irework." Black Cat's reply at 9 [ECF No. 29].

---

[14] "[A] court's finding that it *does* have personal jurisdiction over a non-resident defendant requires analysis of *both* the long-arm statute and the Due Process Clause." Gray v. Hudson, No. 14CV1183 HEA, 2015 WL 4488143, at *9 n.3 (E.D. Mo. July 23, 2015) (emphasis in original).

Plaintiff argues the exercise of specific personal jurisdiction is supported by Black Cat's "extensive marketing activities conducted in Missouri, among other states, [which] amply demonstrate[] Black Cat's indispensable involvement in the sale and distribution of the allegedly defective [F]irework," and Black Cat's direct connection to the stream of commerce leading to the sale of the firework by Dave's Fireworks to Marty's Fireworks. In support, Plaintiff relies on the Black Cat Fireworks website.

Due process requires "'minimum contacts between a defendant and the forum state' so that 'jurisdiction over a defendant with such contacts may not offend traditional notions of fair play and substantial justice.'" Aly, 864 F.3d at 849 (quoting Downing v. Goldman Phipps, PLLC, 764 F.3d 906, 912 (8th Cir. 2014)). "The fundamental inquiry is whether the defendant has 'purposefully availed' itself of the 'benefits and protections' of the forum state, to such a degree that it 'should reasonably anticipate being haled into court there.'" Viasystems, 646 F.3d at 594 (quoting Burger King Corp. v. Rudzewicz, 471 U. S. 462, 482 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). To determine the sufficiency of a nonresident's contact with the forum state, a court considers: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc., 702 F.3d 472, 477 (8th Cir. 2012) (quoting K-V Pharm. Co., 648 F.3d at 592). "Telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process[.]" Eagle Tech., 783 F.3d at 1137.

Plaintiff's primary contention is that Black Cat's marketing activities were "related to 'placing a defective product in the steam of commerce.'" More specifically, Plaintiff alleges that Black Cat's participation in the stream of commerce renders it subject to liability for a defective product, because that participation "creat[ed] consumer demand for and reliance on [the] product."[15] Gunderson v. Sani-Kem Corp., 674 S.W.2d 665, 668 (Mo. Ct. App. 1984) (finding a defendant in a strict liability case was properly held liable for the plaintiff's injuries because, even though the defendant did not sell the nozzles for a conveyor belt's lubrication system, it had participated in the stream of commerce by modifying the nozzles' placement).

Although several Supreme Court decisions have questioned the precise boundaries of the "stream of commerce" concept, a prerequisite to its application is that the defendant manufactures or distributes a product to the market and ultimately to consumers. J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 881 (2011) ("The stream of commerce, like other metaphors, has its deficiencies as well as its utility. It refers to the movement of goods from manufacturers through distributors to consumers, yet beyond that descriptive purpose its meaning is far from exact").[16] Marketing and advertising targeted at a forum state may be helpful in assessing whether a defendant, who has placed a product into the "stream of

---

[15] One element of a Missouri product liability claim requires the plaintiff to establish that "[t]he defendant, wherever situated in the chain of commerce, *transferred* a product in the course of [the defendant's] business." Mo. Rev. Stat. § 537.760(1) (emphasis added); see also Ford v. GACS, Inc., 265 F.3d 670, 680–81 (8th Cir. 2001) ("The common thread among Missouri products liability cases is that an entity must have placed a defective product in the stream of commerce") (internal citations and quotations omitted); Wright v. Newman, 735 F.2d 1073, 1078–79 (8th Cir.1984) (finding that a financial institution lending money to purchase a vehicle involved in the accident resulting in the plaintiff's injuries was "merely tangential" to the stream of commerce because the "focus is . . . on whether the commercial entity is in the chain of distribution that provides a product to the consumer").

[16] See also World-Wide Volkswagen, 444 U.S. at 297–98 ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State"); Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 615 (8th Cir. 1994) (finding a Japanese fireworks manufacturer subject to personal jurisdiction based on the stream of commerce theory when the company had "poured its products into regional distributors").

commerce," has "purposefully directed" its activities at the forum state. <u>Asahi Metal Indus. Co. v. Superior Court of Calif., Solano Cty.</u>, 480 U.S. 102, 112 (1987) ("<u>Asahi</u>"). For example, in <u>Asahi</u>, Justice O'Connor's plurality opinion reasoned that "designing the product for the market in the forum State, advertising in the forum State . . . or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" may be evidence of a defendant's "intent or purpose to serve the market in the forum State." <u>Id.</u> It is not clear, however, that a defendant who is a marketer only and does not have a role as a manufacturer, seller or distributor falls within the bounds of the stream of commerce concept. <u>See</u> <u>Johnson v. American Leather Specialties Corp.</u> 365 F.Supp.2d 1015, 1025 (N.D. Iowa 2008) (finding the stream of commerce theory inapplicable because the defendant challenging personal jurisdiction was not "the manufacturer, seller or distributor of the product at issue in the litigation").

Here, Plaintiff has not alleged or otherwise shown that Black Cat is a manufacturer, seller, or distributor of the Firework or any Black Cat branded fireworks. The only information available of record establishes that Black Cat engages in marketing services supporting other companies' manufacture, distribution and sale of Black Cat branded fireworks. Moreover, the record demonstrates Black Cat's marketing services were not performed in Missouri, but in offices located in California and Kansas.

Plaintiff argues that <u>Bristol-Myers Squibb</u> supports a finding of personal jurisdiction because Black Cat "devis[ed] a marketing strategy, [and a] label[], for" Black Cat branded fireworks, including the Firework. Pl.'s opp'n mot. dismiss at 8-9 [ECF No. 26]. In <u>Bristol-Myers Squibb</u>, the Supreme Court found the non-resident drug manufacturer had not "create[d] a marketing strategy for [its drug] in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California." 137 S. Ct. at 1778–

14

80. The court in California could not, therefore, exercise personal jurisdiction over the manufacturer with respect to the non-resident plaintiffs' claims, because those plaintiffs had not purchased or been injured by the drug in California, and there was no "affiliation between the forum and the underlying controversy." Id.

The Supreme Court's reasoning in Bristol-Myers Squibb does not support the Plaintiff's conclusion that marketing or labelling alone is sufficient to support personal jurisdiction. In fact, like the defendant in Bristol-Myers Squibb, Black Cat did not "manufacture, label, package, or work on [any] regulatory approval" for the Black Cat brand's fireworks in Missouri.

Even if due process is not violated by exercising specific personal jurisdiction over a defendant providing only marketing services, the record here does not provide support for a finding that Black Cat purposefully directed its marketing efforts to Missouri, or to Dave's Fireworks in Missouri. Rather, the record discloses that Black Cat directed its marketing efforts throughout the United States to all distributors, dealers, vendors, and customers, no matter where located.

In her affidavit, Plaintiff states that she viewed Black Cat's website (although she does not allege where this viewing took place), which was also accessible to consumers in Missouri. However, a connection to Missouri "based solely on . . . passive internet activity," where "[t]he website was not used to complete any transaction, facilitate any communication, or beget any interaction" between Plaintiff and Black Cat is too attenuated and remote that "any consequences felt in Missouri . . . cannot reasonably be attributed to [the defendant's] online activity." State ex rel. PPG Indus., Inc. v. McShane, 560 S.W.3d 888, 892–93 (Mo. 2018) (en banc). Indeed, although Black Cat's website "was accessible by Missouri residents, it was not *targeted* at Missouri residents" and Black Cat "did nothing more than publish information that was equally

15

as available to individuals in each of the other 49 states as it was to residents of Missouri." Id. at 892 (emphasis in original). Specific personal jurisdiction is not established by access to a website "merely mak[ing] information available to other people." Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010) ("The website's accessibility in Missouri alone is insufficient to confer personal jurisdiction"); accord Sheely v. Gear/Tronics Indus., Inc., No. 1:15-cv-00048 SNLJ, 2015 WL 4958083, at *5 (E.D. Mo. Aug. 19, 2015) ("maintenance of a general information website" and minimal sales were insufficient contacts with Missouri to support the exercise of personal jurisdiction).

With respect to Plaintiff's product liability claim, the only alleged activity or occurrence in Missouri is (1) the distribution and sale of Black Cat branded fireworks to various dealers or partners located in Missouri; (2) the distribution and sale of the Firework to Dave's Fireworks, which is located in Missouri, by an unidentified party located in an unknown State; (2) the sale of the Firework by Dave's Fireworks to Marty's Fireworks in Wisconsin; and (3) Black Cat's provision of marketing services and materials to distributors and vendors throughout the country, including Missouri. These facts do not create a sufficient connection between Black Cat's marketing activities, Missouri, and the "underlying controversy" regarding the Illinois Plaintiff's accident which occurred in an unidentified location, to support this Court's exercise of specific personal jurisdiction over Black Cat.

This Court has determined that the exercise of personal jurisdiction in a product liability case may not be warranted where non-Missouri plaintiffs "did not see marketing in Missouri, . . . did not purchase [the product] in Missouri, and were not injured by [the product] in Missouri"). Dyson v. Bayer Corp., No. 4:17CV2584 SNLJ, 2018 WL 534375, at *4 (E.D. Mo. Jan. 24, 2018). Those circumstances are present here: nothing of record supports a conclusion

16

that the Illinois Plaintiff saw any of Black Cat's marketing in Missouri, purchased the Firework in Missouri, or was injured in Missouri. See also State ex rel. Bayer Corp. v. Moriarty, 536 S.W.3d 227, 234 (Mo. 2017) (rejecting the plaintiff's contention that "[drug] trials or marketing" in Missouri were sufficient to establish a Missouri court's exercise of specific personal jurisdiction "when it is not alleged the injuries arose out of those trials or marketing").

## IV. Conclusion

Plaintiff has not carried her burden of establishing a prima facie case that this Court may properly exercise personal jurisdiction over Black Cat.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Black Cat's motion to dismiss for lack of personal jurisdiction [ECF No. 21] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claim and cause of action against Black Cat Marketing USA is **DISMISSED** for lack of personal jurisdiction.

                                                                             _____
                                                                             PATRICIA L. COHEN
                                                                             UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of February, 2019